Wytheville.

## Murphy's Hotel Company, Inc., and Others v. Benet and Others.

June 8, 1916.

Absent, Cardwell, J.

1.  TRUSTS AND TRUST DEEDS—*Second Trust Deed—Purchaser for Value.*—The trustee in a second deed of trust can be as truly a purchaser for value and without notice as a trustee in a first deed of trust can be. If he is a purchaser for value without notice, the beneficiary takes subject only to the rights secured by the first mortgage, and is not affected by the liens of judgments not docketed before his deed of trust was duly recorded.

2.  TRUSTS AND TRUSTEE—*Second Trust Deed—Quit Claim Deed—Purchaser for Value.*—A second deed of trust, in the usual form, to secure a debt, which conveys all of the grantor's right, title and interest in the lands described, with covenants of general warranty, is not a quit claim deed. If from the terms of the deed, the adequacy of the price paid, or other circumstances, it appears that the grantor intended to convey, and the grantee expected to be invested with the fee-simple or other particular estate, the purchaser will be protected.

3.  PURCHASER FOR VALUE—*Notice—Defects in Chain of Title.*—While a purchaser at a judicial sale is bound to look to the papers in the cause which furnish reliable information as to the property sold, the title and boundaries of the land and the like, the purchaser of land lying in a county, the records of which furnish full information as to the title, is not obliged to examine the records of a suit in a distant city, which constitute no part of the chain of title, simply because such records are referred to in one of the deeds constituting a part of the chain of title.

4.  JUDGMENTS—*Docketing—Partition Suits—Pendente Lite Purchaser.*—A judgment creditor cannot, by filing his petition and proving his judgment in a partition suit in one county preserve his lien on land in another county as against a purchaser thereof for value and without notice. The judgment must be docketed in the county in which the land lies. If not, such purchaser takes free of the judgment. He is not a *pendente lite* purchaser.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*A. B. Dickinson* and *R. H. Talley*, for the appellants.

*W. P. DeSaussure* and *J. Winston Read*, for the appellees.

Harrison, J., delivered the opinion of the court.

This controversy involves the right of priority between certain judgment creditors and a deed of trust creditor of Mary Lee Benet, in the distribution of the proceeds of certain real estate in which their debtor had an interest. It appears from the record that Mary Lee Benet became, in 1908, when her mother died, the owner of an undivided one-fourth interest in a large estate known as the "A. J. Ford trust estate." This estate was being administered at the time under the orders and decrees of the Chancery Court for the city of Richmond. In 1910, Mary Lee Benet filed her bill in the Chancery Court for the city of Richmond, where most of the property was situated, asking for a partition of this trust estate among the parties entitled thereto, which was heard with the suit then pending for the general administration of the trust estate, and in April, 1910, a decree was entered directing a sale of all of the Ford trust property. Among other properties belonging to this estate were certain lands lying in the county of Gloucester. By deed duly recorded in Gloucester county November 21, 1910, Mary Lee Benet conveyed with general warranty to a

trustee all of her right, title and interest in these Gloucester lands to secure to Thomas Toby a note for $10,000.   At the time this lien in favor of Toby was recorded there was another and prior deed of trust upon the same property securing the sum of $3,000. The judgments in question were obtained against Mary Lee Benet by the several appellants in sundry courts of the city of Richmond in the year 1909, but were never docketed in the county of Gloucester. The prior deed of trust mentioned securing $3,000 was paid off in 1914, and is, therefore, not involved in this controversy.   The present litigation is between Thomas Toby, the beneficiary under the second deed of trust securing $10,000, which was recorded in Gloucester county in November, 1910, and the appellants, whose judgments were obtained and docketed in 1909, in the city of Richmond.   The lower court held that the deed of trust in favor of the appellee, Thomas Toby, had priority over the judgments asserted by the appellants, and decreed accordingly.

The appellants contend that when Mary Lee Benet gave the first deed of trust for $3,000 on her one-fourth interest in the Gloucester county lands, she had left only an equity of redemption, and that the trustees in the second deed of trust securing Toby $10,000 did not acquire the legal title but a mere equity, and is not therefore a purchaser for value without notice.   In other words, the contention is that a second deed of trust takes subject to any judgments obtained against the grantor, whether docketed in the county or corporation wherein the real estate is located or not.

This proposition is without merit.   It is a common occurrence for loans to be secured by a second deed of trust, and when such loans are made the trustee there-

in can be as truly a purchaser for value and without notice as the trustee in the first deed can be. If he is a purchaser for value without notice, the beneficiary takes subject only to the rights secured by the first mortgage and is not affected by the liens of judgments not docketed before his deed of trust was duly recorded. *Shurtz* v. *Johnson*, 28 Gratt. (69 Va.) 657.

In that case the facts, briefly stated were as follows: In 1859 White conveyed certain real estate in York county, Virginia, to Peachy, trustee, to secure a certain debt. In 1866 he conveyed the equity of redemption in the same property by a second deed of trust to Williams, trustee. Certain creditors recovered judgments against White which were not docketed in the county of York until 1867. Judge Burks, in delivering the opinion of the court, said in part: "At the time the deed was made to Williams (trustee), 31st May, 1866, neither the trustee nor the creditors secured by the deed had any notice of them. If they had been docketed in said county within twelve months from the date of their recovery, they would have constituted liens on White's equity of redemption of the deed to Peachy (trustee), as of the date of their recovery (Code, 1860, ch. 186, secs. 6, 8), which, being prior, would have been superior to the lien created by the deed to Williams (trustee). The trustee in the last named deed and the creditors secured therein are 'purchasers for valuable consideration' within the meaning of section 8, ch. 186, Code of 1860, and having had no notice of the judgment at the time the deed was executed and recorded, the lien created by the deed takes precedence of the lien of the judgments."

It is further contended by the appellants that the second deed of trust under which the appellee, Toby,

claims is only a quit claim deed, and that he is, therefore, not protected as a *bona fide* purchaser. If it were conceded that one who takes under a quit claim deed cannot occupy the position of purchaser for value without notice, the concession would not avail the appellants for the reason that the deed on its face wholly fails to justify the contention that it is a quit claim deed. The instrument is in the usual form of a trust deed. It conveys all of the right, title and interest of the grantor in the lands described, with covenants of general warranty, and clearly states that it is to secure the payment of a $10,000 note to the holder thereof. The presence of a warranty in a deed is one of the distinguishing characteristics between a quit claim deed and a warranty deed.

"The doctrine that one who claims under a quit-claim deed will not be protected against a prior unrecorded deed must be limited to the strict sense of that technical species of conveyance. If from the terms of the deed, the adequacy of the price paid, or other circumstances, it appears that the grantor intended to convey, and the grantee expected to be invested with, a fee-simple title or other particular estate; the purchaser will be entitled to protection." 24 Am. & Eng. Enc. of Law, p. 122, and note 2.

In the case before us, it appears from the terms of the deed that the consideration was adequate, that the grantor intended to convey, and the grantee expected to be invested with right and title to the property conveyed so far as it was necessary to satisfy the debt thereby secured. The record does not furnish a fact or circumstance to sustain the contention that the deed in question was intended to be or was in fact a quit-claim deed.

It is further contended by the appellants that the recitals in the deed of trust taken by the appellee,

11

Toby, gave him constructive notice of their judgments. It is one of the agreed facts in this case that neither Toby, his trustee, nor his attorney had any notice of the judgments asserted by the appellants, save only such notice as the law would impute to them from the deeds recorded in Gloucéster constituting links in the chain of title. The claim of the appellants is that the deed of trust, by which the debt due appellee was secured, referred to a prior deed, in the chain of title, which made reference to the several suits, heard together in the city of Richmond, involving the administration and settlement of the A. J. Ford trust estate, and that if the appellee had investigated those suits he would have discovered the existence of the judgments which were then unknown to appellee. If it were true that this voyage of discovery would have disclosed appellants' judgments, we are unable to perceive wherein any obligation rested upon the appellee to investigate the suits pending in Richmond. Those suits constituted no part of his chain of title which was wholly in the county of Gloucester. The deeds there of record gave appellee a sufficient description of the property he was securing his debt upon, and all the information that was needful to accomplish his purpose. An examination of the records in Gloucester county showed that there were no liens by judgment, or otherwise, binding the property except the first deed of trust mentioned for $3,000; and appellee was put upon no such notice, by those deeds, as required him to inquire further than the records of Gloucester county where the lands, in question, were situated.

It is true that in a judicial sale the papers in the cause furnish reliable information as to the property to be sold, the title, boundaries, etc., and to these the purchaser should look. But Mrs. Benet, the grantor

of appellee, did not hold title under a judicial sale. The deed by which she acquired title was the deed. from A. J. Ford in his own right and as trustee to Munford, &c., trustees, dated June 10, 1898, eleven years before the judgments now sought to be enforced were obtained. It is further insisted by appellants that the appellee and the trustee in the deed securing his debt were *pendente lite* encumbrancers, who stood in the shoes of their grantor, and, therefore, could not occupy the position of purchasers for value without notice. The ground upon which this contention rests is not clear. It is claimed that this was the effect of an opinion rendered in the causes pending in the Chancery Court of the city of Richmond in July, 1912. This opinion does not in our judgment, warrant the interpretation sought to be put upon it. By petition filed in the causes pending in Richmond, the appellee sought to have a resale of certain property located in York county and the city of Richmond, upon which his trust deed rested, on the ground that he was not a party to the suit and had no notice thereof. The court declined to order such resale, holding that an encumbrancer of a cotenant was not a necessary party to a partition suit, and that his lien would attach either to the moiety of land allotted his grantor, or to her interest in the proceeds of sale. The opinion relied on nowhere intimates that the appellee had lost his lien. It says, in part: "If the land is divided in kind amongst the cotenants, the liens upon the undivided share of each of them will thereupon attach to the divided share; and, in case of a sale, the liens will attach to the proceeds belonging to the cotenants whose undivided share was encumbered. In effecting a partition it is not the business of the court to draw into discussion the various rights and conflicting equi-

ties of persons holding encumbrances upon the share of one of the cotenants. The property is divided *cum onere*. Freeman on Co-Tenancy, sections 478, 479.

"The right of partition would be seriously impaired if, after a decree of sale and confimation to a purchaser, an encumbrancer of one cotenant, and one who is not even a necessary party to the cause, could intervene in the suit and demand that the sale be set aside because inadequate. The encumbrancer took his lien subject to the hazard of a partition suit to which he would not be made a party." *Wright* v. *Strother*, 76 Va. 857; 21 Am. & Eng. Enc. of Law, 1188, 1189; Bennet on Lis Pendens, secs. 155, 288.

If the contention of appellant were sound, it would destroy the force and effect of the registry laws. If a judgment lien creditor, by filing his petition or proving his judgment in a partition suit pending in the city of Richmond, can obviate the necessity of docketing his judgment in every county or corporation where his debtor has real estate, then section 3570 of the Code would afford no protection to a purchaser. That section tells a prospective purchaser that judgments, not docketed in the county or corporation wherein the real estate is situated, shall not affect his rights. The record furnishes no evidence of any act of omission or commission done by the appellee that impairs his rights as a *bona fide* purchaser for value without notice, under his deed of trust of November, 1910.

The registry laws afford amply protection to purchasers as well as creditors, and if either fail to avail of the law made for their protection, they must suffer the consequences.

There is no error in the decree complained of and it is affirmed.

*Affirmed.*