# Richmond.

## NELLIE K. SCOTT v. MARVIN R. SCOTT.

March 19, 1925.

Absent, West, J.

Argued before Judge Kelly took his seat.

1. BILL OF REVIEW—*Errors Apparent on the Record—Newly Discovered Evidence.*—A bill which does not point out any error of law apparent on the face of the record nor alleges any newly discovered evidence, is not maintainable as a bill of review.

2. DIVORCE—*Service of Process—Time of Filing Answer—Case at Bar.*—In the instant case, a suit to set aside a decree of divorce *a mensa*, it was assigned as error that the divorce suit was not instituted by a summons served by a sheriff or a sergeant, but it appeared that the process was served by a sergeant, and, although returnable to the third Monday, it was entirely competent and legal for the defendant in the divorce suit to appear (as she did do) and file her answer before that time; and the court thus acquired jurisdiction of her person and of the subject matter of the suit.

3. DIVORCE—*Service of Process—Notice to take Depositions not Served by an Officer—Acceptance of Service—Case at Bar.*—In the instant case, a suit to set aside a decree of divorce, notice to take depositions in the divorce case was not served by an officer upon the defendant but the record showed that the notice to take depositions was accepted by the defendant who was present during the taking of the same. While sections 5106 and 6042 of the Code of 1919, requiring service by an officer in divorce proceedings, may be mandatory and the procedure prescribed therein a jurisdictional prerequisite, yet circuit courts are given general jurisdiction to hear and determine divorce suits where the parties are brought into court. When the court has jurisdiction of the parties as it did in the divorce suit in question it has jurisdiction of the subject matter of the litigation, and sections 5106 and 6042 of the Code of 1919, in prescribing that process, notice, etc., should be served only by an officer did not prohibit defendant in the divorce case from accepting due and legal service of the notice to take depositions.

4. DIVORCE—*Service of Process—Sections 5106 and 6042 of the Code of 1919—*

*Purpose of Legislature.*—In the enactment of sections 5106 and 6042 of the Code of 1919, prescribing that process, notice, etc., should be served only by an officer, the legislature was seeking, where process was claimed to have been actually served, to have the same done by some official who would be answerable for a false return. The statute neither expressly nor impliedly inhibits an actual party to a divorce suit from personally accepting service.

5. PROCESS—*Notice—Purpose.*—The purpose to be accomplished by process or notice is to apprise a party of the nature of the proceeding against him.

6. ABATEMENT—*Imperfect Service—Appearance—Waiver of Defects.*—If a writ issues irregularly or the service thereof is imperfect a party may appear specially and plead in abatement, but where he does neither and appears generally, then whatever may have been the defect in the process or the service is waived, for general appearance constitutes waiver of such defect.

7. PROCESS—*Service by Officer—Waiver.*—Although a statute may limit the method of serving process to officers, that provision does not inhibit an appearance and a waiver of such service.

8. DIVORCE—*Service of Process—Waiver of Defects.*—Where a defendant in a divorce suit not only personally accepted a notice of the taking of depositions, but was present when they were taken, and filed her answer without objecting to the notice, she thereby waived any and all irregularity therein.

9. BILL OF REVIEW—*When Maintainable—Error Merely a Matter of Form.*—Where a bill of review is filed on the ground of error, the decree complained of must be contrary to some statutory enactment or some principle or rule of law or equity recognized and acknowledged, or settled by decision, or be at variance with the forms and practice of the court, but the bill cannot be maintained where the error is merely a matter of form or because a case was not regularly set for hearing.

10. BILL OF REVIEW—*Error Apparent on the Face of the Record—Issues of Fact.*—On a bill of review for error of law apparent on the face of the record, the decision of the court upon the issues of fact, so far as they depend on the proof in the case, is conclusive on the bill of review. A bill of review does not lie to review or correct errors of judgment in the determination of facts. If there be error in this particular after a final decree, it can be corrected only by an appellate court.

11. DIVORCE—*Setting Aside Decree—Bill of Review—Issue of Fact—Evidence Sufficient to Support Decree.*—In the instant case, a suit to set aside a decree of divorce, it was insisted that the evidence in the divorce suit was insufficient to support the decree, but if it be conceded (as it was not) that there was not sufficient evidence to support the decree that was an error, if any error at all, of judgment in the determination of facts, which can be corrected only by an appeal.

The decision of the court upon the facts, however erroneous, is conclusive on a bill of review and cannot be questioned.

12. Judgments and Decrees—*Setting Aside—Fraud—Decree of Divorce—Collusion.*—A decree will not be set aside at the suit of a party guilty of fraud in obtaining it, or consenting thereto. Thus a decree of divorce obtained by collusion *cannot be attacked by either party.*

13. Fraud and Deceit—*Proof.*—One who alleges fraud must prove the allegation by clear and convincing proof.

14. Divorce—*Setting Aside Decree—Fraud and Duress.*—Complainant in the instant case sought to have a decree of divorce against her set aside on the ground that it was obtained through the duress and fraud of' her husband and his attorneys. The charge rested entirely upon complainant's own statement, and was flatly and positively rebutted and contradicted by her own admissions, and the evidence of the attorneys and other reputable witnesses.

*Held:* That complainant's bill was properly dismissed as no fraud,. imposition or duress was proven.

Appeal from a decree of the Circuit Court of the city of Lynchburg. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Volney E. Howard* and *S. Duval Martin,* for the appellant.

*S. V. Kemp* and *Randolph Harrison,* for the appellee.

Per Curiam:

We have concluded that the decree here under review should be affirmed.

The reasons which justify this conclusion are sufficiently expressed by the Honorable William R. Barksdale, who decided the case in the trial court, whose opinion we adopt. It follows:

"The original bill in this case was filed in the Circuit

Court of Lynchburg on the 17th. day of March, 1923, by Nellie K. Scott against Marvin R. Scott, and had for its object the setting aside and annulment of a decree of divorce *a mensa et thoro*, granted the said Marvin R. Scott by said court on the 11th day of December, 1922, on the ground of fraud, and also prayed that the said defendant might be required to pay her at once the sum of $500.00 to enable her to prosecute her suit. A demurrer to the bill, in so far as it prayed for suit money, was sustained at the May term of said court, and on the 18th day of July, 1923, the plaintiff filed an amendment to the original bill in which, in addition to the prayer of the original bill that said decree of divorce be set aside on the grounds of fraud, asked as alternative relief against the wrong done her by said proceeding and decree, to-wit, that said final decree of divorce be reviewed by this court for errors apparent upon the face of the record, and the alleged errors are:

"1. The record shows that said suit was not instituted by a summons which was served by a sheriff of a county or by a sheriff or sergeant of a city, as is required by sections 5106 and 6042 of the Code of Virginia.

"2. That the notice to take the depositions upon which the cause was heard and decided was not served by a sheriff or sergeant, but that the record shows that the notice to take the said depositions was accepted by the defendant.

"3. The record shows that said suit was never instituted and proceeded in, or in any way matured and set for hearing, as required by law, but to the contrary, that the bill of the plaintiff and the answer of the defendant were both presented to the court and filed in open court at the same time, and for the first time

on the same day on which the decree of divorcement was pronounced, without previous process or maturing for hearing of any kind or character, upon depositions which had been taken six days previously to the filing of the bill and answer.

"To both the original and amended bills the defendant filed his answer denying the material allegations of said bills of complaint.

[1] "It is plain, as pointed out in the defendant's brief, that as the original bill neither points out any error of law apparent on the face of the record nor alleges any newly discovered evidence, it is not maintainable as a bill of review, but stands solely on the charge of fraud. Can the amended bill be sustained as a bill of review?

[2] "In her amended bill the complainant alleges three errors of law:

"1. That the record shows that the divorce suit was not instituted by a summons served by a sheriff or sergeant. The answer to this is, that the process was served by C. J. Tyree, sergeant, and although returnable to the third Monday, it was entirely competent and legal for the defendant in the divorce suit to appear (as she did do) and file her answer before that time; the court thus acquired jurisdiction of her person and of the subject matter of the suit.

[3-7] "2. The second alleged error of law in the amended bill is that the record in the divorce suit shows that the notice to take depositions was not served by an officer, but that legal service of the same was accepted by Nellie K. Scott.

"The record unquestionably shows that state of facts, but it also shows that she was present at the taking of the depositions; that she filed her answer thereafter and had her case heard without objection on

said depositions. As to the acceptance of notice of depositions and the complainant's presence during the taking of the same, the complainant contends that the provisions of sections 5106 and 6042 of the Code are mandatory, and the procedure prescribed therein is a jurisdictional prerequisite. While this may be true, it is also true that circuit courts are given general jurisdiction to hear and determine divorce suits where the parties are brought into court. When the court has jurisdiction of the parties as it did of the complainant by the service of the process exhibited in the record, it has by force of the statute jurisdiction of the subject matter of the litigation. I do not think that the contention of the plaintiff that sections 5106 and 6042, in prescribing that process, notice, etc., should be served only by an officer, prohibited the plaintiff from accepting due and legal service of the notice. The legislature was seeking, where process was claimed to have been actually served, to have the same done by some official who would be answerable for a false return. The statute neither expressly nor impliedly inhibits an actual party to a divorce suit from personally accepting service. The purpose to be accomplished by process or notice is to apprise a party of the nature of the proceeding against him. Of course, if a writ issues irregularly or the service thereof is imperfect a party may appear specially and plead in abatement, but where he does neither and appears generally, then whatever may have been the defect in the process or the service is waived, for general appearance constitutes waiver of such defect. *Lane Bros.* v. *Bauserman,* 103 Va. 146, 48 S. E. 857, 106 Am. St. Rep. 872. Although a statute may limit the method of serving the process to officers, that provision does not, I think, inhibit an appearance and a waiver of such service. There is no decision in

Virginia upon the question we have been discussing, that the party to a divorce cause cannot accept notice or waive it by appearing generally.

[8] "The record here, however, shows not only that the complainant (1) personally accepted the notice of the depositions, but was also (2) present when they were taken, and (3) filed her answer and without objecting to the notice, even if it were irregular, thereby waived any and all irregularity therein.

[9] Many authorities have been cited in support of the view that, for such an irregularity as the one we have been discussing, a bill of review cannot be maintained. In Hogg's Equity Procedure, page 280, it is said: When the bill is filed on the ground of error, the decree complained of must be contrary to some statutory enactment or some principle or rule of law or equity recognized and acknowledged, or settled by decision, or be at variance with the forms and practice of the court, but the bill cannot be maintained where the error is merely a matter of form or because a case was not regularly set for hearing, and in *Gills* v. *Gills*, (from Campbell Co.), 126 Va. page 546, 101 S. E. 906, it is said: "Courts are provided for the purpose of putting an end and a speedy end to controversies and not as a forum for endless litigation. Without valid excuse, no party who has had his day in court can reopen the hearing after final decision of extrinsic matters in controversy between the same parties on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made. It is seldom that such defenses have any real merit, and where it chances that they have any validity, it is better that they should be lost by the negligent litigant, than that the vitally important rule that there must be an end of litigation should be set at naught."

[10] "From an examination of many Virginia cases, it will be seen that on a bill of review for error of law apparent on the face of the record, the decision of the court upon the issues of fact, so far as they depend on the proof in the case, is conclusive on the bill of review.

"In *Powers* v. *Howard*, 131 Va. 275, 108 S. E. 687, Judge Kelly, in his opinion, quotes from Lile's Equity Pleading and Practice, section 142, as follows: 'A bill of review does not lie to review or correct errors of judgment in the determination of facts. If there be error in this particular after a final decree, it can be corrected only by an appellate court;' and continuing, Mr. Lile says: 'The sufficiency or insufficiency of the proofs cannot be considered. The decision of the court upon the facts, however erroneous, is conclusive on a bill of review and cannot be questioned;' and further quoting from *Valz* v. *Coiner*, 110 Va. 467, 66 S. E. 730, he says: 'As to errors of law, they must be such as appear on the face of the decrees, orders and proceedings in the cause arising on facts, either admitted in the pleadings or stated as facts in the decrees, such errors of law and such only may be corrected by a bill of review. But if the errors complained of be errors of judgment in the determination of facts, these can only be corrected by appeal.'

[11] "Much emphasis was laid in the course of the oral argument of complainant's counsel on the insufficiency of the evidence, the point specially urged being that the evidence of Killin, the only witness examined other than the defendant, Scott, was not sufficient to justify the court in granting the divorce, but if it is conceded (as it is not) that there was not sufficient corroborative testimony and evidence other than the testimony of the defendant, Scott, that is an error, if any error at all, of judgment in the determination of

facts, which can be corrected only by an appeal, 'the decision of the court upon the facts, however erroneous, is conclusive on a bill of review and cannot be questioned.' The court, however, does not admit that there was any error of judgment even, and is satisfied that the proofs were sufficient to justify the granting of the divorce. Nor can the court in the determination of this question consider the evidence of Mrs. Scott, which was duly objected to when taken, tending to prove a different state of facts than those established by the proofs in the original suit.

"From these considerations the conclusion is irresistible that the allegations of the bill of review are insufficient to justify the court in reviewing, modifying or setting aside the original decree of divorce.

[12] "With the alleged errors of law thus disposed of, the complainant's case rests solely on her charge of *fraud*, for while collusion and fraud were both insisted on in the oral argument, no charge is made by the complainant in the bill that the divorce was granted by collusion between herself and her husband. She did not in fact have any right to have said decree modified or annulled on the ground of collusion. In Long on Domestic Relations, section 141, pages 290 and 291, it is said: 'A decree will not be set aside at the suit of a party guilty of fraud in obtaining it, or consenting thereto.' Thus a decree of divorce obtained by collusion *cannot be attacked by either party.*

"Has the complainant established any fraud in the procuring of said divorce either by her husband or by his attorneys, or by them collectively?

[13] "One who alleges fraud must prove the allegation by clear and convincing proof. Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity, and the power ought not to

be exercised except in a clear case and never for an alleged fraud, unless the fraud be made clearly to appear.

"In *Hord* v. *Colbert*, 28 Gratt. (69 Va.) 49, it is said that the party alleging fraud must clearly and distinctly prove it. 'If the fraud is not strictly and clearly proved, as it is alleged, although the party against whom relief is sought may not have been perfectly clear in his dealings, no relief can be had.'

"One who seeks to cancel a contract for fraud and duress must carry the burden of proof and furnish clear and full proof of such fraud and duress.

[14] "In the case under consideration, the alleged fraud and duress rests solely on the complainant's testimony. The charge of duress, imposition and fraud by the combined efforts of her husband and his attorneys, Don P. Halsey and Thomas J. O'Brien, has nothing to sustain it, except her own statement, and is flatly and positively rebutted and contradicted by her own admissions, and the evidence of Mr. Halsey, Mr. O'Brien, Mrs. Bryant and Mr. Cole. While the complainant alleges that she was hysterical and nervous, terrorized and imposed on by her husband and coerced by him into consenting to the divorce proceedings, neither her testimony nor her conduct then and subsequently sustain her contention.

"She was not, as her counsel contend, *inops consilii.* When informed by her husband that he contemplated divorce proceedings, she sought and obtained the presence and advice of her brother, who was assisting and advising her for some time before the suit was instituted. She evidently knew of the contemplated grounds —cruelty, desertion and adultery—and while she denies the charge of adultery, was unwilling to contest the divorce on that ground, was anxious for that charge

to be eliminated, and as she afterwards admitted to Mr. Cole, did not fight the divorce case because, as she says, 'after talking it over with her brother, they decided not to get a lawyer and not to fight the case because of publicity, and they wanted it quiet.' She did not intimate to Mr. Cole that she had been coerced or defrauded in any way, but that there probably was some irregularity for which she could probably have the decree of divorce annulled. The complainant's charge that she signed the answer to the bill and agreed to its being filed as soon as the court opened, December 14th, without understanding what she did is denied by both Mr. Halsey and Mr. O'Brien and Mrs. Bryant.

"In short, not to prolong this opinion, no fraud or imposition either on the part of Mr. Scott or of his attorneys has been proven. On the contrary it appears that she acted with full appreciation of the situation and a full understanding of her rights after an opportunity to employ counsel at her husband's expense had been given her. She, to prevent delay and to expedite the granting of the divorce, furnished herself (quite an unusual circumstance) her marriage certificate which was a necessary exhibit with the bill. She 'haggled' with Mr. Halsey over the amount of her monthly allowance and discussed with him the method and manner of her visits to her children. She had, doubtless, to say the least of it, been guilty of improper conduct with her cousin, Starkey, and was fearful of the scandal that Starkey's letter to her would disclose, and says of the letter, that while she does not remember that Scott said anything about that letter giving him grounds for divorce, 'I just supposed that he could get it off the letter.'

"As to when the answer was to be filed and the decree asked for, the statement of the complainant is in

direct conflict with the evidence of the attorneys, the alleged fraud and duress rests solely on her improbable and unreasonable testimony, which is completely destroyed by the evidence of Mr. Halsey and Mr. O'Brien, attorneys of high standing and gentlemen of unquestionable character and integrity. Their evidence satisfies the court that no fraud or duress has been practiced on the complainant and that her bill should be dismissed."

*Affirmed.*